## THE CITY OF NEW YORK.

*(District Court, S. D. New York. April 29, 1885.)*

1. COMMISSIONERS' REPORT — EVIDENCE AS TO VALUE OF VESSEL — BEST EVIDENCE.

   A collision occurred between the steamer City of New York and the iron bark H., which resulted in the total loss of the bark and injury to the steamer. On the trial both vessels were found in fault, the damages were directed to be divided, and the matter referred to a commissioner to take proof of damage. In the testimony as to the value of the bark, it was shown that no sale of an iron vessel had ever taken place in New York, and market value could not be proved here. Libelants offered the testimony of one witness, an insurance inspector, who had seen the bark six years before; but they did not issue a commission to Dundee, where the bark was built, to obtain evidence of her value, either from cost of construction or from known sales of similar vessels. Respondents' witnesses, who were equal as experts to the witness of the libelants, put a lower value on the bark. *Held* that, as libelants had not produced the best evidence in their power, the estimates of respondents' witnesses must be adopted.

2. SAME — EVIDENCE AS TO VALUE OF STORES.

   Testimony as to the ship's stores was given chiefly by the mate of the bark, who made a list of them from his recollection. No evidence was given as to the the actual purchase of stores. *Held,* that the estimate of the value of a vessel ordinarily includes her usual outfit. As there was nothing in the mate's testimony to indicate how much of the stores of the bark was in excess of her usual outfit, some deduction must be made on this account.

3. SAME — ALLOWANCE FOR SUPPOSED STORES.

   Stores which it was alleged such vessels as the H. usually carried, but which were not included in the mate's list, and as to which there was no direct evidence, *held,* disallowed.

4. SAME — DEPRECIATION OF CARGO — INVOICE VALUE THE STANDARD.

   The cargo of the bark was sugar, laden at Havana. It was proved that on such a cargo as this there is a loss of weight, from Havana to New York, of from 3 to 5 per cent.; and, as the bark was lost within half a day's sail of New York, the owners of the steamer contended that a deduction to that amount

should be made from the invoice weight. *Held*, that the rule allowing the invoice value of the cargo at the port of shipment applies to the value of the cargo there as a whole, and that no deduction for natural loss or shrinkage in weight merely could be allowed.

5. SAME—AGENCY COMMISSION.

The steamer was obliged to put back to New York for repairs, and part of her cargo was there taken out and stored on the steamer's wharf. An allowance was made to the owners of the steamer for their expenses in unloading and loading again, and for storage; in addition to which they claimed an agency commission for care of cargo. *Held*, that such claim, in addition to storage, should be disallowed, it appearing that they had stored the cargo in their own buildings.

In Admiralty.

*Scudder & Carter* and *Geo. A. Black*, for libelants.

*A. O. Salter*, for respondents.

BROWN, J. In the above cause of collision, the court having previously held both vessels in fault for the loss of the iron bark Helen and her cargo, in June, 1879, (15 FED. REP. 624,) upon the coming in of the commissioner's report on damages, numerous exceptions have been filed by both parties. The examination by the commissioner of the many details of the case has been made with care, and I do not find sufficient reason to attempt any better solution of most of the difficulties presented. Some modifications as to the value of the ship and her stores should, I think, be made, with a view to require, in such cases, the production of the best evidence, rather than approve a practice which would rest content with evidence of a less satisfactory character.

1. As to the value of the bark, the libelants produced but one witness, a marine insurance surveyor and inspector. He saw her once in 1873, when he examined her for the purpose of rating, and classed her as "A1¼." He did not value her at that time, and had not seen her since. It was part of his business to keep•posted in regard to reports of sales of vessels. No sales of iron ships, however, have ever been made in this port; and he had no actual experience, either in buying, selling, building, or equipping such vessels, and had no personal knowledge of the sales or cost of construction of iron vessels like the Helen, or of any other iron vessels, though he had frequently valued them for insurance purposes. This witness valued the bark, at the time of her loss in 1879, at $15,000. This evidence was objected to by the claimants' counsel as incompetent. The commissioner at first rejected, but afterwards received it. The vessel belonged in Dundee, where her owners resided. It would not have been difficult for the libelants to prove her actual value by persons in Dundee or in England, that had knowledge of the bark and of her real value, based upon their experience in the sales of such iron vessels, or in the cost of building and equipping them, and upon their yearly depreciation. I am inclined to think that the testimony of this witness was rightly received as not wholly incompetent. His large and constant experience in the valuation of vessels generally, and his knowl-

edge, though indirect and at second hand, of reported sales and of the construction of iron ships abroad, with his valuations of them for insurance purposes here, makes him competent, I think, to give an estimate of their value when no better evidence can be had. For some purposes, in the course of admiralty proceedings, such as in appraisements for giving security, the estimates of such witnesses would be practically sufficient. But it is far from satisfactory as a sole reliance when the final question comes, how much money shall be paid for the actual value of such a vessel lost? The best evidence that can be obtained with reasonable ease and convenience ought then to be required in place of the estimates of such witnesses. There is no reason to suppose that entirely satisfactory evidence could not easily have been obtained by commission. So far as I have ascertained, the previous cases, and they are many, in which the estimates of experts have been received, these estimates were based upon a knowledge of sales of similar vessels, or of other facts bearing upon their actual cost and market value.

The libelant having rested upon the estimate of this witness, the claimant presented the testimony of a similar witness equally well qualified in general respects; but he had never seen the vessel. He estimated her value at $13,815, which valuation the commissioner adopted. A second witness for the claimant, who also had never seen the bark, but had more practical acquaintance with the construction of iron vessels, their cost from time to time, and with sales of such ships, estimated her at $3,000 less.

Where the best evidence presumably in the power of the libelant to give, is not furnished, lower estimates by the respondents' witnesses that are, at least, equally well qualified, ought to be adopted. Upon this ground I reduce the valuation of the Helen to $12,500.

2. Somewhat similar considerations apply to the evidence submitted by the libelant as to the amount of the ship's stores and her outfit, not included in the estimate of the value of the vessel. The mate, in his original deposition in the cause, made out a list of items called "Stores on board the late bark Helen." The list consists of some 50 different items, beginning with "2,240 lbs. (one ton) of bread." The whole list, being valued by other experts here, amounts to $3,769.81. About one-half of this amount is made up of five hawsers, three new sixty-fathom lines, two coils ratlines, one-inch three-line manilla; and four new sails are added, making $418 more. The mate testified that in March previous, the ship had been fitted out for a three years' cruise; and in another place he says the bark took in stores at Havana, and at the time of the loss had some of the stores that he took in there. Here, again, no evidence was offered of the actual purchase of such a large quantity of stores, although it was presumably easily within the libelants' power to produce such proof. The mate's testimony was an estimate from recollection. The estimate of the value of a vessel, moreover, ordinarily includes her usual outfit, and em-

braces such spare sails, rope, and hawsers as are usual. There is nothing in the mate's testimony to indicate with any certainty how much of such articles was in excess of such a reasonable and ordinary outfit of the ship. Upon this ground I disallow one half of the new sails, namely, $209.25, and one quarter of the charge for hawsers and lines, namely, $450.

3. Three hundred dollars, moreover, was allowed upon the hypothetical testimony that such a ship must have had other articles that the mate failed to specify in his list; such as tea, tobacco, etc., which it is said such vessels always have. I cannot sanction such hypothetical charges when other evidence is in the power of the party. As respects such articles, moreover, there is no evidence that any stock worth mentioning remained on hand when the bark had arrived within a day's sail of New York; or that they were not designed to be replenished here, in the same way that other stores had been taken in at Havana. This item must, therefore, be disallowed.

4. The claimants further contended that they were entitled to a reduction of from 3 to 5 per cent. on the invoice value of the cargo of sugar, which amounted to $19,260.57, on the ground that it was proved that there is always a shrinkage in weight to the extent of from 3 to 5 per cent. I do not think this deduction comes fairly within the rule applied in cases of collision, that adopts the value at the port of shipment rather than that at the port of destination. The rule is designed to exclude anticipated profits. The ultimate object is to determine the actual loss at the time and place of collision. This is found, say the supreme court, by taking "the prime cost, or market value of the cargo at the place of shipment, with all charges of lading and transportation, including insurance and interest, but without any allowance for anticipated profits." *The Scotland*, 105 U. S. 24, 35; *The Aleppo*, 7 Ben. 120, 133; *The Lively*, 1 Gall. 315, 322. The loss or shrinkage referred to here is not a special loss arising through any perils of the seas or washing away, which would doubtless be deducted, if proved; but the natural shrinkage in weight that accompanies all transportation of such cargoes. The "prime cost of this cargo," as it existed at the moment of collision, was its cost as a whole at Havana. Though not physically identical with the shipment at Havana, through a shrinkage in weight, it was commercially identical. The loss of weight is made up by the increase in value,—not the market value, but the intrinsic value,—which remains the same for the cargo as a whole. The intent of the rule above referred to is, therefore, carried out by retaining unchanged the gross value of the cargo as a whole, the same as at the port of shipment. This exception is, therefore, disallowed.

5. As respects the exceptions on the part of the libelant, it would appear that the omission of the proportionate part received for old copper was an oversight which should be corrected. I think also that the allowance of $333.33 as an agency commission to the claimants

for care of the cargo must, in this case, be disallowed. They placed the cargo, or so much of it as was unladen, in buildings upon their own wharf; and they have been otherwise allowed for all the labor and expense attending it, and also a charge for the storage of it, as well as for watchmen. I do not understand that there was any additional responsibility on the part of the claimants not compensated for by these items; and when they store the goods themselves, and receive compensation for storage, and do not procure it elsewhere or by other means, I think that an additional commission cannot be allowed. *The Edward Albro,* 10 Ben. 668, 685; *The J. C. Williams,* 15 Fed. Rep. 558, 560.

Having deducted $450 from the stores included in the Whitlock estimate, a deduction of 10 per cent. from the price of such articles new will be a sufficient abatement on what remains of that list, making that list of items $2,574.28 instead of $3,310.31.

I do not find any sufficient reason for modifying the other items excepted to on either side. The result of these modifications is to reduce the libelant's claim, with interest, by $2,311.42, making his claim, including cargo, $50,981.33; and to reduce the defendants' claim, including interest, by $873.18, making their claim amount to $7,876.39. One-half the difference between these sums is $21,552.47, for which sum, with interest from March 24, 1885, the libelant is entitled to judgment, with costs.

Any further questions as respects liability for cargo are reserved.