## THE MARY N. BOURKE.

(Circuit Court of Appeals, Second Circuit. April 11, 1906. On Rehearing, April 23, 1906.)

### No. 132.

**1. Shipping—Account for Repairs—Lay Days for Use of Dry Dock.**

It is the duty of a repairer of a vessel to release her from the dry dock as soon as the repairs are so far along that they can be completed with her afloat, and he will not be allowed a charge for lay days for use of the dock after the time she should have been so released by the use of reasonable dispatch in the work.

**2. Same—Set-Off—Demurrage for Delay.**

Evidence *held* sufficient to entitle the owner of a vessel to a set-off for demurrage against the cost of repairs, because of unnecessary delay in their completion during the busy season of navigation.

[Ed. Note.—Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

**3. Interest—Law of Place—Contract to Repair Vessel.**

Under a contract for repairing a vessel made in the state where the repairs were to be made, interest on the cost should be computed in accordance with the laws of such state.

Appeals from the District Court of the United States for the Western District of New York.

On appeal and cross-appeal from a decree in admiralty entered by the District Court for the Western District of New York, March 4, 1905, in favor of the libelants for $18,250.35 and interest thereon from the date of the decree. The amount demanded in the libel is $20,255, the balance alleged to be due after the payment of $5,000 on account by the claimants. The answer avers that the sum charged for repairs was unreasonable and alleges a set-off amounting to $2,500 for delay in completing the work. The district court reduced the libelants' claim by striking out various items amounting in the aggregate to $3,318.23. The claimants insist that the amount awarded was exorbitant and should not have exceeded the sum of $10,000, and the libelants insist that the deductions from the full amount claimed by them were unwarranted by the proof. Assignments of error filed by the parties fully present their respective contentions.

The decision below is reported 135 Fed. 895.

George Clinton, for libelants.

T. E. Tarsney and W. G. Fitzpatrick, for claimants.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

COXE, Circuit Judge. The claimants' schooner Mary N. Bourke was seriously damaged by collision and subsequent stranding and on May 17, 1902, was placed in the libelants' dry dock for survey and repair. The survey was made by Alexander Hynd of Cleveland, Ohio, a man of large experience and unquestioned competency. The survey, which was completed May 23, shows on its face that it was made with great care and attention to detail, three or four days being devoted to its preparation and the examination of the vessel, which was then resting on the blocks in the dry dock. The estimate of repairs made by Hynd was $13,405, in which amount was included $1,140, being 10 per

cent., added for contingencies. The estimated value of the schooner in her damaged condition was $3,295. After the repairs were completed and the Bourke was at Tonawanda, N. Y., Hynd and Angus McDougall, who is local surveyor of the Great Lakes Register residing at Buffalo, made an examination for the purpose of determining her value. The claimants offered to show by both these men that at the time of the completion of the repairs the value of the vessel did not exceed the sum of $16,300, which testimony, if allowed, would tend to substantiate the correctness of the survey in which the cost of repairs, plus the value of the vessel in her damaged condition, is stated at approximately the same amount. The court excluded the testimony and though we are inclined to think it was competent from an expert in connection with his previous testimony we do not deem it necessary to complicate the case by a ruling to this effect, as sufficient is shown to warrant a substantially similar conclusion. Of course the estimates of the surveyor are not perfectly accurate. After the vessel was opened up new defects were discovered and some repairs were added which were not in the domain of the survey. But when everything is considered and a fair profit is added it is difficult for us to understand why the actual expense should so greatly exceed the estimated expense, why, in other words, the repairs upon a wreck worth less than $4,000 should have been swelled to the enormous sum of $25,255. The vast discrepancy between the amount charged and the advantage to the claimants leads us to think that, to say the least, the work was not economically done. On the other hand there is no doubt that it was well and skillfully done and except in a comparatively few instances, considering the innumerable items of the account, we find the testimony insufficient to warrant a conclusion that items of material or labor have been grossly overcharged.

We think the district judge was justified by the proof in disallowing the items stated in the opinion and deem it unnecessary to discuss these items further than to say that we concur in his conclusions and are satisfied with his reasoning.

There was no express contract, the basis of the action is quantum meruit, the burden being upon the libelants to prove that the services and materials were reasonably worth the sums charged therefor. We do not see our way clear to make deductions in addition to those made by the district judge except in one particular.

Among the charges made is one of $4,416 for 80 lay days, being $35.20 per day for use of dry dock. The district judge made a deduction of twenty lay days but we think the number should be still further reduced. Notwithstanding the testimony of usage we cannot resist the conclusion that the per diem charge for the use of the dry dock, considering its probable value, was, to say the least, an exceedingly liberal one and should not be extended to cover a single day when it was not necessary for the Bourke to occupy the dock.

The libelants were required to do the work without unnecessary delay and they expressly agreed to do a "quick job." In the letter of May 27 the libelant James Davidson says:

"We are now prepared to rush through any work you may want in good shape. * * * I have also made a personal examination of the Bourke. and find that she came down to the blocks in the dry dock in good shape and find the Bourke in very good condition. Of course you will understand the Bourke will need a new stern post, and also a new rudder, some keel, and also some bottom plank, but the bottom is not nearly so bad as you think, and after this is cleaned up, and after you decide to go ahead with the work we can do a quick job, and also put the Bourke in first class shape so that she will be a good ship for many years to come."

On August 4 libelants wrote as follows:

"Also note that you would like to have the Bourke ready to go with the Schoolcraft (her steamer) about the 18th and we do not think there is any question but what we can have her ready by that time."

Notwithstanding this assurance she was not released from the dry dock until August 23d and was not finished and ready to join her consorts until September 15th. This was not the dispatch which the claimants had a right to expect.

Again it was, we think, the duty of the libelants not only to do the work as rapidly as possible but to release the vessel from the dry dock as soon as she was in condition to float. It is unreasonable to require the claimants to pay $35 per day for use of the dock when work was being done which could as well have been done after the Bourke left the dry dock. If the libelants for their own convenience kept her there unnecessarily the claimants should not be required to foot the bill. After the bottom was completed and properly calked and painted so that the use of the dry dock was no longer necessary there should be no charge for its use. We are not satisfied that this was the case. Taking everything into consideration we are convinced that forty days was ample time in which to complete all the repairs for which the dock might properly have been used. This reduces the libelants' charge for lay days to $2,208.

We are also of the opinion that the Bourke should have been turned over to her owners not later than August 18th. She was one of three vessels towed by the Schoolcraft and, at the most busy period of the season on the great lakes, it can hardly be doubted that she would have earned something during this period. In the very nature of the case the evidence to establish her earnings is problematical, but we think it is sufficient within the rule of The Providence, 98 Fed. 133, 38 C. C. A. 670, and The Cayuga, 14 Wall. 270, 20 L. Ed. 828. A conversative estimate of the Bourke's earnings during the period in question is $350.

It is undisputed that this action is brought upon contracts made in Michigan by citizens of that state and that the contracts were to be performed there. In these circumstances we think the interest should have been allowed at the Michigan rate which was five per centum per annum. Pana v. Bowler, 107 U. S. 529–546, 2 Sup. Ct. 704, 27 L. Ed. 424. Coughlan v. S. C. R. Co., 142 U. S. 101–114, 12 Sup. Ct. 150, 35 L. Ed. 951.

It follows that the decree must be amended by deducting therefrom the sum of $1,454 and the difference in the rate of interest, and as so amended it is affirmed.

The claimants are entitled to the costs of this court.

## On Rehearing.

PER CURIAM. In affirming the decree of the court below, in respect to the item for wastage in timber, we did not intend to concur in the reasoning of the district judge placing the allowance upon the theory of an established usage, but were of the opinion that, irrespective of any usage, the proofs authorized the allowance. The language of our opinion warrants no different interpretation.

The motion for rehearing is denied.