## THE NEWAYGO.

### (District Court, E. D. Michigan, S. D.    February 20, 1913.)

### No. 5,049.

1. INTEREST (§ 39*)—PROCEEDINGS FOR LIMITATION OF LIABILITY—ALLOWANCE OF CLAIMS.

Interest allowed on a claim for wrecking services rendered in an unsuccessful attempt to rescue a stranded steamer only from date of the filing of the commissioner's report, nine years after the services were rendered, where because of a contract between the parties the court was obliged to allow the full contract rate therefor, without the right to a limitation of liability, and where, also, the delay was due to the fault of both parties.

[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 83–89; Dec. Dig. § 39.*]

2. COURTS (§ 363*)—FEDERAL COURTS—RATE OF INTEREST IN STATE.

Where interest is allowed on claims in admiralty, there is no uniform rule requiring the rate to be 6 per cent.; but the modern tendency, and it would seem the better practice, is to conform to the legal rate of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 939–949; Dec. Dig. § 363.*]

3. SALVAGE (§ 36*)—WRECKING SERVICES PERFORMED UNDER CONTRACT—COMPENSATION.

Where a towing company contracted to perform all towage and wrecking services required by a steamship company during the season, allowing a uniform discount of 20 per cent. from the regular tariff, and on being called upon rendered services in an unsuccessful attempt to rescue a stranded steamer of the company, it cannot be required to accept payment under the salvage rule.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 85–89; Dec. Dig. § 36.*]

4. SALVAGE (§ 36*)—WRECKING SERVICES PERFORMED UNDER CONTRACT—COMPENSATION.

Where such contract authorized the towing company to charge extra for lighters, if used in the service, the use of one owned by the steamship company did not entitle the latter to offset the value of such use against the claim of the towing company.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 85–91; Dec. Dig. § 36.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Admiralty. In the matter of the petition of the Mills Transportation Company for limitation of liability, as owner of the steamer Newaygo. On claim of Great Lakes Towing Company. Decree for claimant.

See, also, Great Lakes Towing Co. v. Mill Transp. Co., 155 Fed. 11, 83 C. C. A. 607, 22 L. R. A. (N. S.) 769.

F. H. & G. L. Canfield, of Detroit, Mich., for petitioner.

Goulder, Day, White, Garry & Duncan, of Cleveland, Ohio, for claimant.

TUTTLE, District Judge. The Great Lakes Towing Company made a contract with H. W. McMorran to furnish all towing and wrecking services required by the boats under his management from July, 1903, to the end of the season, at a discount of 20 per cent. from the regular tariff, which contract included the boats owned by the Mills Transportation Company, of which boats said McMorran was manager, and as such authorized to make the contract. On November 11, 1903, the steamer Newaygo (one of the boats owned by the Mills Transportation Company) was stranded on the reef known as "Devil's Island Shoal," in Georgian Bay, and telegrams were sent to the Great Lakes Towing Company, directing them to send the tug Favorite to the assistance of the Newaygo. In compliance with these requests, and acting under the contract, they sent the tug Favorite on November 17th, at 5:05 p. m. from Cheboygan to the Newaygo. The tug arrived at Tobermoray on November 18, 1903, at 5:45 p. m., and from then until November 26, 1903, made every effort to release the Newaygo. By the assistance of the Checotah, the tow barge of the Newaygo, which was also owned by the Mills Transportation Company, two pumps were placed on board on November 25th; but it was found impossible to lower the water, and on November 26th all further efforts were abandoned, and the tug started for Cheboygan with the crew of the Newaygo on board, where she arrived on November 27th at 8:15 p. m. The Newaygo was a total loss, except for articles to the value of about $156. During this period of time in question, and on November 23d, the Favorite pulled the Strathcona off Flower Pot Island, where she was stranded. The Strathcona was owned by a third party. The time spent on the Strathcona by the Favorite was 3 hours, and a charge of one day's time was made by the Favorite to the Strathcona. This work was done on the Strathcona at a time when there was nothing that could be done by the Favorite to assist the Newaygo. Many additional facts are stated in the opinion of the Circuit Court of Appeals in considering this case on the petition of the Mills Transportation Company for limitation of liability. 155 Fed. 11, 83 C. C. A. 607, 22 L. R. A. (N. S.) 769.

The Great Lakes Towing Company rendered a bill charging for 10 days' use of the tug Favorite, at $350 per day, and for 10 days' use of two pumps, at $50 each per day; the same being according to the regular tariff price. From this amount a discount of 20 per cent. was allowed according to contract. Various small items for extras actually furnished, amounting to $127.43, made the total amount of the claim as presented $3,727.43. The Great Lakes Towing Company

claims that the time computed according to contract was 11 days, but that one day was deducted for the 23d day of November, when the tug was employed in pulling the Strathcona off Flower Pot Island where she was stranded. The Mills Transportation Company claims that 10 days, the time as originally charged in the bill presented, would be correct, if no work had been done on the Strathcona, but that one day should be deducted, leaving the bill for 9 days. The commissioner has sustained the contention of the Mills Transportation Company in this regard.

The court cannot agree with this finding. The regular tariff for the steamer Favorite was $350 per day, with minimum charge of one day, and all fractions of days counted the same as whole days. This time should be computed from the time the Favorite left Cheboygan on November 17th, at 5:05 p. m., until she reached Cheboygan on November 27th, at 8:15 p. m., a period of 10 days, 3 hours and 10 minutes, which under the schedule should be computed as 11 days, except for the fact that the Favorite did 3 hours' work on the Strathcona during that period of time. If the actual time spent on the Strathcona be deducted, the balance of the time is a few minutes more than 10 days. If a whole day (the time charged to the Strathcona) be deducted, it leaves 9 days and a fraction of a day, so that on either theory, and under any proper computation, claimant was entitled under the tariff to charge for 10 days. It was not necessary for the Great Lakes Towing Company to mention the work done on the Strathcona in presenting its bill. It presented an itemized bill, showing what work had been done for the Newaygo, giving dates, hours and minutes. It carried out the amount at 10 days, when by dates and items given in its bill it would be entitled to charge for 11 days. It made out the bill correctly, and made the proper reduction. No fault can be found because it did not state why the reduction was made, and it would not be proper to permit the reduction of another day at this time. The pumps were not used on the Strathcona. No charge was made to the Strathcona for pumps, and there is nothing in that connection which should alter the amount to be charged the Mills Transportation Company for the use of pumps.

It therefore follows that the first and second exceptions of the Great Lakes Towing Company to the report of the commissioner are sustained, and the Great Lakes Towing Company will be allowed for 10 days' services of the steamer Favorite, at $350 per day, and for 10 days' use of two pumps, at $50 per day for each pump, less the 20 per cent, discount provided for in the contract.

[1] The commissioner has allowed interest on the claim at 5 per cent. from September 4, 1912, the date of filing the report, and the Great Lakes Towing Company has excepted because the commissioner did not allow interest at the rate of 6 per cent., and from January 27, 1904, the time when the claim was presented for payment. In fixing the amount of the claim, the court has been compelled to construe the contract strictly, which gives the claimant a larger sum than the court would allow for the services rendered under all the circumstances, except for the price agreed upon in the contract. Counsel on each side have spent much time in trying to convince the court that the opposite

party is responsible for the 9 years which have elapsed since the services in question were performed without an adjustment of the claim. Each has in a measure been successful, and the court is satisfied that the responsibility rests in some degree on both parties, and that such delay would not have been possible, had either party pressed the matter diligently all the time.

Because of the fact that under the contract the court is compelled to allow the claim at a larger amount than the services were worth, the court feels bound to exercise its discretion as to the date from which interest should be computed in favor of the Mills Transportation Company. The long and unnecessary delay should also be considered. It is a matter for the discretion of the court. In the exercise of that discretion the court finds that interest should be computed from September 4, 1912, the date of filing the report. In the opinion of the court this loss of interest to claimant and corresponding gain by the Mills Transportation Company makes the amount of the claim which is now allowed just and fair.

[2] It has been argued that the rate of interest should be fixed at 6 per cent., on the theory that such is, or ought to be, the uniform rate in admiralty cases, without reference to the laws of the state in which the court is sitting. Some support for this argument may be found in The Aleppo, 7 Ben. 120, Fed. Cas. No. 158, and The Oregon (D. C.) 89 Fed. 520, which are predicated upon Hemmenway v. Fisher, 20 How. 255, 15 L. Ed. 799, and in the fact that in a considerable number of cases of collision, without discussion of the rate, 6 per cent. has been allowed. The general tendency of federal legislation and decision has been toward conformity with state laws in matters of interest, at least in law and equity, and an exception of admiralty cases ought to be clearly shown. Undoubtedly, as stated in The Aleppo, the 6 per cent. rate had been allowed by the Supreme Court for many years. When did it originate, and has it continued to the present time?

Prior to 1803 admiralty decisions in the Supreme Court mention 10, 8, and 7 per cent.; after 1803, and until about 1858, the rate, when mentioned, is always 6 per cent. Recently the rate mentioned has been that of the state. Talbot v. Janson, 3 Dall. 133, 1 L. Ed. 540; Cotton v. Wallace, 3 Dall. 302, 1 L. Ed. 612; Del Col v. Arnold, 3 Dall. 333, 1 L. Ed. 624; The Diana, 3 Wheat. 58, 4 L. Ed. 333; The Santa Maria, 10 Wheat. 431, 6 L. Ed. 359; The Dove, 91 U. S. 381, 23 L. Ed. 354; The Conemaugh, 189 U. S. 363, 23 Sup. Ct. 504, 47 L. Ed. 854.

I am impressed with the view that the origin of the 6 per cent. rate is to be found in rule 18 of the Supreme Court, promulgated in 1803, and that, although not absolutely embracing admiralty cases, because of the element of discretion therein, it sufficed to fix the rate when interest was granted. In this way an apparent uniformity of rate would appear from the decisions. The rule itself continued until it was superseded by rule 62, announced in 1852. In the general revision of 1858, the subject was covered by rule 23, which expressly leaves the matter of interest to the special direction of the court. The framework of the rule leads to the idea that the state rate should be observed if any interest is allowed, and it is significant that in the two

cases of The New York, 175 U. S. 187, 20 Sup. Ct. 67, 44 L. Ed. 126, and The Conemaugh, 189 U. S. 363, 23 Sup. Ct. 504, 47 L. Ed. 854, the state rate was expressly given. The Court of Appeals for the Second Circuit has also recently held that the state rate controlled. The Bourke, 145 Fed. 909, 76 C. C. A. 441.

These considerations prevent my finding that any uniform rule of 6 per cent. prevails in the admiralty of this country, and, in ordinary cases, I am not disposed to vary from the rule fixed by the statutes of Michigan. The legal rate of interest has been reduced from time to time in this state, and generally all over the country. While 6 per cent. was a just and proper rate for the court to fix in admiralty cases prior to 1858, the situation is different to-day, and the same considerations which would lead the court at that time to fix the rate at 6 per cent. would now lead the court to name a lower rate. Money is now frequently loaned at 5 per cent., and it is the opinion of the court that 5 per cent. is a just and proper rate of interest in admiralty cases. It should also be borne in mind that this particular claim is based on a contract, and the legal rate of interest in this state is 5 per cent. While this is not binding upon the admiralty courts, it should have weight. For these reasons, the third and fourth exceptions of the Great Lakes Towing Company are overruled, and interest will be computed upon the claim as allowed at 5 per cent. from September 4, 1912.

[3] The Mills Transportation Company has also taken numerous exceptions to the finding of the commissioner, all of which are overruled. Some of these, however, are deserving of discussion by the court. The claim of the Mills Transportation Company that the services were pure salvage cannot be sustained. The contract was made for the entire season, and a reduction of 20 per cent. agreed upon from the regular tariff. The agreement for the season and for the 20 per cent. reduction is inconsistent with the salvage rule. When the service in question was requested, it was certainly understood that it should be performed under the contract; and it was so performed. The Mills Transportation Company now undertakes to construe the contract in such a manner as to make the salvage rule apply, because the last sentence of the tariff reads as follows:

"Charge for outside and hazardous services will be made in accordance with value of services rendered and risk taken."

Taking the entire tariff page into consideration, this language cannot be construed to mean that a less amount should be charged in any case than the regular charge of $350 per day for the use of the Favorite, but rather should be construed to mean that in doing outside work a larger charge than $350 per day might be made if the work was hazardous, or unusually valuable services were rendered. This contract had in mind the fixed and definite charges for all work, from which a 20 per cent. discount could be taken.

[4] The Mills Transportation Company claims that it should be given credit in the way of an offset at the rate of $100 per day for 9 days' use of the barge Checotah as a lighter. The Checotah was the property of the Mills Transportation Company, and was used by the Favorite in putting pumps on the Newaygo, because the water

was too shoal for the Favorite to come alongside the Newaygo. The captain of the Favorite made an entry in his records showing that the Checotah had been so chartered. There is nothing in the tariff or in the contract which could possibly be construed to mean that the Great Lakes Towing Company should furnish a lighter without charging therefor; on the other hand, the language of the tariff and the contract, as well as the custom and practice prevailing, would lead to the opposite conclusion. Reference is made to the following paragraph in the tariff:

"No charge will be made for pumps and other equipment kept regularly aboard steamers and lighters, unless used; if used, charge will be made from the time of leaving dock until return, all labor extra."

And also to the following paragraph in the contract:

"All charges for labor, meals, and other items representing cash advances shall be net and payable on demand."

All of this leads irresistibly to the conclusion that if it had been necessary to use a lighter, and one had been hired by the Great Lakes Towing Company, it would have been a proper charge to include in the bill. Inasmuch as the lighter used was the property of the Mills Transportation Company, it would have been a useless item of bookkeeping to credit the Mills Transportation Company with the use of the lighter, and then to charge them with the same item. It appears that the Favorite was insured, and it is evident that the entry was made by the captain of the Favorite, showing that the Checotah had been chartered as a lighter, and naming the price, in order that a record might be kept for the benefit of the Mills Transportation Company, if needed by the Newaygo in collecting her insurance. It should not in any way affect the bill of the Great Lakes Towing Company.

It therefore follows that a decree will be entered in favor of the Great Lakes Towing Company for the full amount of its claim, $3,727.43, with interest on said amount at 5 per cent. from September 4, 1912. The decree will be without costs to claimant.