# THE ARMONIA.

## THE REDRUTH.

## CORY et al. v. PENCO.

### (Circuit Court of Appeals, Third Circuit. May 3, 1897.)

1. COLLISION—NEGLIGENCE OF PILOT—EVIDENCE.

   The evidence should be very persuasive to induce the belief that a skilled pilot, whose incentive to caution is manifest, and who, presumptively, is not usually negligent, had, in disregard of sufficient warning, failed to take the most ordinary care to prevent his vessel from colliding with one at anchor.

2. ADMIRALTY APPEALS—ASSIGNMENTS OF ERROR.

   It may well be doubted whether an averment of error should be sustained, even in admiralty, which is founded on the omission of the court to find a fact which was not in issue, nor material to the issues, as made by the pleadings, and on its failure to adjudicate a question which was not even suggested for its consideration.

3. COLLISION—DAMAGES—PROOF OF PAYMENT OF BILLS.

   In showing damages resulting from a collision, it is sufficient prima facie proof for libelant to produce the bills claimed to have been paid, and witnesses who testify that they paid them, without calling those to whom payment was made.

4. SAME—DAMAGES FOR DETENTION.

   A vessel injured by collision through the fault of the other vessel is entitled to the amount of loss actually sustained in consequence of the detention occasioned by the collision.

5. SAME.

   Where a vessel anchored in a usual place of anchorage at night, with proper lights burning and a proper watch, was run into by a steamer, *held*, that the presumption applied that the moving vessel was in fault, without showing wherein her fault consisted. 67 Fed. 362, affirmed.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

This was a libel by Domenico Penco, master of the bark Armonia, against John Cory & Sons, owners of the steamer Redruth, to recover damages resulting from a collision. The district court rendered a decree for the libelant (67 Fed. 362), and the respondents appealed. After the record was brought up from the court below, the appellants were permitted by the court to file additional assignments of error. 22 C. C. A. 675, 76 Fed. 997.

J. Parker Kirlin and Henry R. Edmunds, for appellants.
Edward F. Pugh and Henry Flanders, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and BUFFINGTON, District Judge.

DALLAS, Circuit Judge. This is an appeal from a decree in admiralty. We are all convinced, upon separate consideration of the evidence, of the correctness of the conclusions of the learned judge of the district court upon every material question of fact on which he based his decision.

It is impossible to fix with precision the spot at which the Armonia was anchored, but it is not requisite to do so. It is enough to say, and of this we have no doubt, that she was not, as the appellants

contend, anchored in midchannel, but was anchored at a point some distance to the westward thereof, and where such vessels were accustomed to anchor.    Any attempt to place her entirely outside of the channel would have been both unusual and hazardous.    It is, however, insisted that, by lying where she did, she violated certain statutory enactments of the state of Delaware. · A sufficient reply to this contention, and therefore the only one which need be made, is that neither of the enactments referred to is applicable to this case.    The Armonia was not "in the range line of any range lights," for, as testified by witnesses on both sides, there are no range lights at that part of Delaware Bay.    The statute is addressed to navigators, and to them the words "range lights" have a plain and distinct meaning. As said by a pilot who was called for the appellants, "A range light is two leading lights, one after another," and that the "red cuts" referred to in the testimony are lights of an entirely different class is so well known that, if the evidence had not been conclusive on the subject, the fact, perhaps, might have been judicially noticed.    The Armonia was not anchored "in any river or creek."    Neither was it necessary that, "to leave a free passage," she should anchor "out of the channel," "near the shore," and "parallel with the channel."    She was therefore not at any place to which the terms of the Delaware statute respecting rivers and creeks relate, or to which its manifest object is pertinent.

The contradictory statements of the witnesses as to whether the Armonia had an anchor light up at the time of the collision fully justify the remark of the learned judge below, "that it is difficult to avoid the conclusion that some of them have intentionally falsified." The weight of the evidence is, however, with the appellee, and our deduction therefrom—that the Armonia did, at the time of the collision, have an anchor light set and burning—is accepted with especial confidence because the answer as originally filed admits that there was such light, and objects only that it was not sufficiently bright.    It is true that this answer was not verified by the respondents, but by their proctor, but it also appears that it was based upon "statements made by the pilot and officers of the steamship Redruth"; and it is a quite significant circumstance that the statement which was thus made accords with the evidence for the appellee as to the nature of the complaint which was made upon the same subject immediately after the occurrence of the accident.    The amended answer was also prepared upon information derived from the pilot and others who were on the deck of the Redruth, and we cannot avoid the conclusion that its allegation that the Armonia did not have up an anchor light is less likely to be correct than the circumstantial admission of more than a year before, that there was such a light.

By leave of this court, the appellants, after the record had been brought up, assigned further error as follows:

"(a) For that the court omitted to find and hold that the only negligence, if any, of those on board the Redruth, which contributed to the collision, was that of a compulsory pilot.

"(b) For that the court omitted to find and hold that the respondents and appellants, in an action in personam, were not liable for damages caused by the negligence of a pilot compulsorily employed."

Both of these specifications rest upon the allegation that the only negligence which contributed to the collision was that of the Redruth's pilot, and to this we cannot assent. The pilot was on the bridge, where he should have been. It does not appear that he permitted his attention to be diverted from the navigation of the ship, and there is nothing in this record which would justify us in finding that he had timely notice of the proximity of the Armonia, and yet failed to keep clear of her. The evidence, we think, should be, indeed, persuasive to induce belief that a skilled pilot, whose incentive to caution is manifest, and who, presumptively, is not usually negligent, had, in disregard of sufficient warning, failed to take the most ordinary care to prevent his vessel from colliding with one at anchor. The brief of the appellants bases their contention upon this question of fact on a supposed finding of the district court in their favor, but there is no such finding. The decree, of course, attributes the fault to the Redruth, but it contains no specific finding of fact whatever. In his opinion, it is true, the learned judge said that he inclined to believe that the ship's fault consisted in her failure to give proper attention to the report of her lookout; but he thought it unnecessary to determine the matter, and was not asked to do so, and the fact is that the point raised here by the added specifications was not thought of by any one in the court below. The respondents took the position, at first, that the anchor light of the Armonia was insufficient, and, subsequently, that she had no anchor light at all; and not until both of these positions had been found to be untenable, and after the record had been removed to this court, was the inconsistent assertion made that the injury inflicted had resulted solely from misconduct of the pilot in disregarding an anchor light which was in fact seen and reported by the lookout on the Redruth in ample time to have enabled her to clear the Armonia. Had this defense been set up by the answer, and the proofs been directed to it, the case, no doubt, would have been differently presented upon both sides. The allowance which was accorded, to file the additional specifications, adds nothing to their force; and it may well be doubted whether, under the circumstances, an averment of error should be sustained, even in admiralty, which is founded upon the omission of the court to find a fact which was not in issue, nor material to the issue as made by the pleadings, and upon its failure to adjudicate a question which was not even suggested for its consideration. But, aside from this, we do not think that the proofs absolve the crew of the Redruth from all responsibility. The master, except so far as her navigation was concerned, was in command of the vessel. The Oregon, 158 U. S. 186, 15 Sup. Ct. 804. He was not on deck. The second mate was on the bridge, but he, as well as the pilot, appears not to have observed the Armonia's light. If he saw it, he certainly should have directed attention to it. If he did not see it, it cannot be fairly said that the pilot, who was also on the bridge, was peculiarly to blame for not seeing it. There was but one forward lookout. He testifies that 15 or 20 minutes before the collision he reported a land light, and this the pilot confirms by stating that at that time a light house was reported. The lookout also testifies that he afterwards reported two

or three lights right ahead, but he also says that he thinks the Armonia had no anchor light, and therefore, even at the time of testifying, he could not have supposed that he had reported it; and the pilot positively swears that the Armonia was never reported at all, and that he was the first to see her. It is not necessary to discuss the evidence further. There would be, as the learned judge of the district court suggested, much difficulty in determining with particularity what the fault consisted in, and this is not extraordinary, inasmuch as, when the evidence was taken, no one supposed it to be important that it should be so determined. It may be that the lookout did not see the Armonia's light, or that, seeing it, he gave no notice, or a misleading one; but, be this as it may, it certainly does not appear that the pilot, in the face of a full discharge of duty by all others on board the Redruth, so negligently navigated her as to cause a collision which he might readily have avoided.

The appellants complain of the action of the court below in its allowance of certain items as damages, and of its disposition of the question of costs. We have examined these several objections in detail, but find no reason for rejecting the report of the commissioner, which was confirmed by the district court. The conclusions reached by him were in every instance the result of careful and intelligent investigation, and we have not been convinced that he committed any error of fact or in law, to the injury of the appellants. The ground of exception which has seemed to us to be most serious is that there was no competent proof of several of the items which were sustained. The libelant, as to the items referred to, produced the bills claimed to have been paid, and witnesses who testified that they had paid them. He did not call those to whom payment had been made, but we are of opinion that it was not, for the purpose of making out a prima facie case, requisite for him to do so. The course pursued accords with the decision of the circuit court in The America, 4 Fed. 337, where (the evidence being similar to that received in this instance) Judge McKennan said: "This was primary proof of the expenditure, of its purpose and its necessity, and, unless answered by counter proof, was altogether sufficient to justify the allowance of such payments." The amount allowed for delay does not seem to be excessive. The demurrage rate fixed by the charter party under which the Armonia was then sailing was shown, and there was evidence that this was also the market rate, as well as the customary rate of this vessel. The commissioner declined to adopt the contention of either party. He thought the libelant asked too much, and the respondent conceded too little. In this he was clearly right; but it was not pretended that no allowance whatever should be made, and the evidence, at least, does not indicate that the sum which he allowed was greater than the amount of the loss actually sustained in consequence of the detention occasioned by the collision, and for this the libelant is entitled to be compensated. We therefore entirely agree with the learned judge of the district court in thinking that the conclusion reached by the commissioner ought not to be disturbed. The decree is affirmed.