### THE BENJAMIN A. VAN BRUNT.

#### PEARCE v. OLD COLONY STEAMBOAT CO.

(Circuit Court of Appeals, First Circuit. November 8, 1899.)

#### No. 273.

COLLISION—STEAMER PROCEEDING IN FOG—FAILURE OF ANCHORED VESSEL TO SOUND BELL.

A steamer with a large passenger list, nearing the end of her trip, is justified in proceeding along a river to her own wharf before anchoring, notwithstanding a dense fog, provided she uses all the precautions possible under the circumstances, and she is entitled to recover damages caused by a collision with a vessel at anchor in the stream, while so proceeding, through the fault of such vessel in failing to sound her bell. La Bourgogne, 30 C. C. A. 203, 86 Fed. 475, followed.

Appeal from the District Court of the United States for the District of Massachusetts.

Eugene P. Carver (Edward E. Blodgett, on the brief), for appellant. Edward S. Dodge and Charles F. Choate, Jr., for appellee.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. This collision between the schooner Benjamin A. Van Brunt and the steamer Pilgrim occurred, during a dense fog, between 4 and 5 o'clock on the morning of Sunday, September 11, 1892, in the channel in front of the city of Fall River. The particular locality was about a mile below the wharves of the Old Colony Steamboat Company, whose steamers, of which the Pilgrim was one, were then plying between Fall River and New York. The Van Brunt came in, coal laden, on Wednesday, September 7th, and had been lying at anchor in the channel at this place, waiting her turn to be unloaded at Staples' coal dock, off which she was anchored.

The Pilgrim was a very large steamer, arriving, with a large number of passengers and a heavy freight, on her regular voyage from New York. She had passed in and out by the Van Brunt every day, and knew that the Van Brunt was lying at her anchorage when she last sailed for New York. She had had, however, no information how long the Van Brunt would lie there, and no especial reason to anticipate that she would be there on her return, Sunday morning. She was, however, bound to consider the possibility of her still lying there; and she was also bound by the usual rules affecting navigation in a fog, as applied to narrow channels in which the presence of other vessels must be anticipated.

It is apparent that no proper provision was made by the Van Brunt for the proper use of her bell. She fails to show that it was sounded on the approach of the Pilgrim. The last course of the Pilgrim was taken some five or six miles below. She had a vigilant lookout, but the Van Brunt claims that he was not so far forward as the expressions of the courts ordinarily require. The Pilgrim maintains that his position was the most suitable one for her under the circumstances then existing. This, however, we need not determine, because the fog was so dense it is plain that, if the lookout had occupied the position demanded by the Van Brunt, the collision would not, nevertheless, have been avoided. Ordinarily, the lack of a proper lookout indicates a want of vigilance which weighs against the proofs offered by a vessel deficient in that respect; but in the present case there was no lack of vigilance, because the position which the Pilgrim's lookout occupied was one of deliberate choice, determined according to the judgment of the officers of the steamer, fairly exercised.

Under the circumstances, the case on the part of the Pilgrim is so much like that of the La Bourgogne, which came before the district court for the Southern district of New York in 76 Fed. 868, and before the circuit court of appeals for the Second circuit in 30 C. C. A. 203, 86 Fed. 475, that it is fairly settled thereby. The La Bourgogne was proceeding to sea down New York Bay, when she met a dense fog. Thereupon she slowed down to some three or four knots an hour, seeking an anchorage. While proceeding to her anchorage, she sighted the Ailsa at anchor, and, though she at once reversed, she could not avoid a collision. It was contended that she should have anchored sooner, and that her omission to do so was a legal fault, which made her responsible for the collision. The court, however, held that she was proceeding to a proper anchorage, and that she was excusable. In other words, she was not required to anchor at once, although the fog was so dense that she could not comply with the rule as to the speed of steamers in fogs as commonly stated, and as also stated and applied by this court in The H. F. Dimock, 23 C. C. A. 123, 77 Fed. 226, 228. Under the circumstances, she was evidently justified by the court in seeking an anchorage, and excused in using the rate of speed necessary to accomplish that purpose.

So, in the case of the Pilgrim, it would have been unreasonable to forbid her, with her large list of passengers, from leaving the fairway, where, while at anchor, she would have been in some danger in

the dense fog, and from approaching her own wharf, provided she used all the precautions which, under the circumstances, were possible. This she evidently did. The proofs show that she slowed down, and afterwards stopped her engines; that then all her watch on deck listened for sounds; that, after the engines had stopped for about a minute, she started up again under a bell for half speed; but that, before her wheels had made a single revolution, her electric headlight struck the Van Brunt, so that the Van Brunt loomed up. Then the Pilgrim's engines were backed at full speed, and her helm was put to port, with the result that the Van Brunt escaped substantially unin-jured, and the Pilgrim was the only vessel to suffer. Had the Van Brunt been sounding her bell, it would have been heard when the Pilgrim stopped her engines, and the collision would have been avoid-ed. Under the circumstances, the Van Brunt was clearly at fault, and the Pilgrim was excusable. It follows that, as the decree of the district court awarded the owners of the Pilgrim the damages suf-fered by her through the collision, it was correct.

The decree of the district court is affirmed, with interest, and the costs of appeal are awarded to the appellee.