THE PROVIDENCE.

PEARCE et al. v. OLD COLONY STEAMBOAT CO. (two cases).

(Circuit Court of Appeals, First Circuit. November 8, 1899.)

Nos. 179, 272.

1. COLLISION—DETERMINING FAULT—VESSEL VIOLATING STATUTORY RULES.
    The rule applied that a steamer violating the statutory rules, by proceed- ing at an unlawful rate of speed in a fog, in connection with which viola- tion a collision arises, to clear herself from liability must show, not merely that such violation was probably not one of the causes of the collision, but that it could not have been.

2. SAME—AWARD OF DAMAGES—REVIEW ON APPEAL.
    The settled rule of the federal courts that successive decisions of two courts in the same case on a mere question of fact are not to be re- versed, unless clearly erroneous, is applicable to the report of a com- missioner in admiralty fixing the damages resulting to a vessel from a col- lision, which has been confirmed by the trial court.

3. SAME—MEASURE OF DAMAGES—DEMURRAGE.
    The fact that there is no means by which to determine the charter value of a vessel injured by a collision, or that the owner has another vessel by which she is at once replaced, does not prevent the allowance of demurrage for the time she is laid up for repairs; and, where she would have been engaged in making regular trips, the damages may be computed on the basis of her average earnings. The Cayuga, 14 Wall. 270, followed.

4. SAME—COST OF REPAIRS—UNSOUNDNESS OF VESSEL.
    The owner of a vessel injured in a collision is not entitled, under the circumstances of this case, to be allowed for the increased cost of repairs caused by the fact that, on opening up the vessel, parts adjacent to those parts injured, and not directly involved therein, are found to be unsound, and the cost of repairing the injured parts is thus increased.

Appeal from the District Court of the United States for the Dis- trict of Massachusetts.

Eugene P. Carver (Edward E. Blodgett, on the brief), for appellants.
Edward S. Dodge and Charles F. Choate, Jr., for appellee.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. These appeals grew out of two suits in the district court arising out of a collision between the steamer Providence and the schooner Benjamin A. Van Brunt in the channel in front of the city of Fall River, shortly before 7 o'clock on the morning of Sunday, September 11, 1892. The facts in this case supplement those stated in our opinion in The Benjamin A. Van Brunt (C. C. A.) 98 Fed. 131, passed down this day. The Providence belonged to the same line as the steamer Pilgrim, and was arriving from New York the same morning, only a few hours later, when she came into collision with the schooner, still anchored, as described in that opinion. The Providence was somewhat injured, and the Benjamin A. Van Brunt was sunk. The result was a libel in favor of the Old Colony Steamboat Company, as owner of the Providence, against the schooner, on which libel the district court found the Benjamin A. Van Brunt alone in fault, and entered a decree against her for the damages which the Providence suffered, from which the owners of the Van Brunt appealed to this court. Her owners also libeled the Old Colony Steamboat Company for the damages suffered by their schooner, which libel the district court dismissed, for the reason already stated, and from the decree of dismissal they also appealed. The result is the two cases in which this opinion is entitled.

The Providence was proceeding to her wharf at between five and six knots. At this locality, and with the fog then existing, this was clearly an unlawful rate of speed, in violation of the statutory regulations. It is claimed, however, on the part of the Providence, that the rate of speed did not contribute to the collision. It is impossible for any court to find that such was the fact. If the Providence had used the same precautions as the Pilgrim, the presumption is that the collision might have been avoided, or, at least, that the consequences would have been no more serious than those of the collision between the Pilgrim and the Van Brunt. However this may be, the rule has been clearly laid down by the supreme court, as shown by us in The H. F. Dimock, 23 C. C. A. 123, 77 Fed. 226, 230, to the effect that a vessel violating the statutory rules, in connection with which violation a collision arises, must show, not merely that such disregard was probably not one of the causes of the collision, but that it could not have been.

On the other hand, the evidence shows clearly that the Van Brunt was negligent with reference to sounding her bell on the approach of the Providence, as she was on the approach of the Pilgrim, and therefore both vessels were at fault.

The court below sent the case to a commissioner, who allowed the Providence, as the cost of repairs, $4,560, and also 18 days' demurrage, at $670 per day. His report was confirmed, but the Van Brunt, having taken exceptions thereto, brings her exceptions before us. The

rule has been many times stated by the supreme court, of which a late instance will be found in Towson v. Moore, 173 U. S. 17, 24, 19 Sup. Ct. 332, to the effect that successive and concurrent decisions of two courts in the same case on a mere question of fact are not to be reversed, unless clearly shown to be erroneous. This rule was applied to a report of a master in chancery which had been confirmed by the court, in Warren v. Keep, 155 U. S. 265, 267, 15 Sup. Ct. 83. Under the peculiarities of this case, this rule is a necessary one. It appears that, in making repairs on the Providence, additional work was caused by the fact that some of her wood was found to be unsound; the commissioner reporting that, when the Providence was opened for repairs, unsoundness was found. The entire cost of repairs was apportioned by the commissioner, and an estimated sum allowed as covering the portion for which the Van Brunt was liable. There was before the commissioner a bill of items showing the cost of the work in detail; but, so far as the record shows, the Van Brunt did not sift out this bill. She, however, produced several witnesses, who testified only as experts, and gave lump estimates of what the repairs should have cost. Therefore, as we have no method of analyzing the lump estimates of the witnesses for the Van Brunt, and as their testimony is not of a character which can be said to clearly preponderate, and as the Van Brunt omitted her opportunity of sifting out the bills of repairs, there is no principle on which we can safely substitute a lump estimate made by ourselves for the award of the commissioner, who had full opportunity of examining the bills and of hearing all the testimony produced, including the witnesses for the Van Brunt. Consequently, the award of the commissioner must stand so far as concerns this point.

The same method of reasoning disposes, also, of the determination by the commissioner of the number of days for which demurrage should be allowed. The record shows that the Providence would have laid off for the season on the 2d of October, or 20 days after the collision, and would then have been replaced by a spare boat, and that her repairs were not then completed. The commissioner made no allowance for any demurrage, except for the time covering the trips which she would have made before the date when she would have been laid off in her regular course of employment. Again, we have the lump estimates of expert witnesses, as against the conclusion of the commissioner, as to the amount of time required for making the necessary repairs caused by the collision, and, for the reasons already stated, we cannot accept them over the commissioner's award.

With reference to the amount of per diem demurrage allowed, there were no circumstances which would enable the commissioner to determine the mere charter value of the Providence at that season of the year. In this respect, the case stands like The Cayuga, 14 Wall. 270, and The Mediana [1899] Prob. Div. 127. The Cayuga was a ferryboat, employed in New York harbor; and, immediately after the collision in which she was injured, she was replaced by a spare boat belonging to the same owners. The court held that an allowance of demurrage was not defeated by the fact that there was no charter rate for the ferryboat, nor by the fact that there was a spare

boat ready to replace her. The precise method by which, in The Cayuga, the allowance for demurrage was reached, is given in the report of the case in the district court. 2 Ben. 125, 127, Fed. Cas. No. 2, 535. The court there states that, when injured, the vessel was in constant, permanent employment, making regular but short voyages, transporting almost the same number of passengers each day, for a fixed price and for cash. It adds: "It would seem, then, that the actual value of her use for seventeen days could be ascertained more nearly than that of most other classes of vessels. Two witnesses, of large experience upon the ferries, were called to prove this value, and they testify to the amount which the commissioner has reported." These were evidently all the facts which were before the court in The Cayuga, and this method of reaching the basis of the allowance was approved in The Conqueror, 166 U. S. 110, 17 Sup. Ct. 510, at pages 128, 129, 166 U. S., and page 517, 17 Sup. Ct. In the case at bar, the allowance as equivalent for the demurrage of the Providence was what the commissioner estimated would have been her net earnings during the period covered by his report, plus the wages of engineers, dockmen, and watchmen necessary to be maintained aboard her pending the repairs. The circumstances are substantially the same as in The Cayuga, except only that the voyages of the Providence were longer. The method of reaching a result was precisely the same, the only difference being that in this case the allowance was more exact than in The Cayuga. We do not see how it could have been less. Another proposition submitted to us is met by The Cayuga, and that is the fact that the owners of the Providence kept another boat for winter service, with which they immediately replaced the Providence for the balance of her season. In this respect, the case at bar follows The Cayuga, where the fact that her owners substituted another ferryboat, which they kept for emergencies, did not defeat the allowance of demurrage, estimated in the way which we have explained. This rule was expressly approved in The Favorita, 18 Wall. 598, 603, and apparently approved in The Conqueror, at pages 128, 129, 166 U. S., and page 517, 17 Sup. Ct.

One point further remains to be considered. The commissioner allowed 18 days' demurrage; but he stated alternatively that only 16 days would have been the proper allowance for the time necessary to repair the damage caused by the collision if the Providence had been sound. He also reported the following: "I find that her unsound condition increased, to some extent, the necessary cost of repairing the damage done by the collision. The exact amount of increase is not made very clear by the evidence; but, upon the whole, I find the amount by which the cost of labor and material needed for repairing the collision damage was increased by her unsoundness to be $600." This $600 was included in the $4,560 already stated. With these items of $600 and 2 days' demurrage is linked an allowance of $40 for the services of a superintendent after the expiration of the 16 days referred to. The commissioner reported that the unsoundness would not, but for the collision, have interfered with the use of the vessel until October 2d, or even longer. It is apparent that the unsoundness thus specially reported on by the commissioner

was not in any part of the steamer which required restoration on account of the damage done by the collision, but was in parts adjacent thereto, and somewhat connected therewith. The commissioner must be assumed to have understood the rule of restitutio in integrum, applicable to cases of this character, and therefore it is presumed that he would not report specially with reference to unsoundness which that rule required to be made good; and, indeed, some of the expressions in his report support this presumption. On the other hand, the authorities cited by the appellants with reference to this part of the commissioner's report are not applicable, because they relate only to the propriety of discriminating, in ascertaining the amount of damages to be awarded, between the repairs of the parts injured by the collision, whether sound or unsound, and the repairs of the adjacent parts not injured by the collision; and the commissioner, as we have already said, made this discrimination.

Therefore, apparently, the question presented by this part of the commissioner's report is whether or not the owner of the vessel injured is entitled to be allowed for the increased cost of repairs caused by the fact that, on opening up the vessel, parts adjacent to those parts injured by the collision, and not directly involved therein, are found to be unsound, so that, on that account, the cost of repairing the part injured is increased over what it would have been if the adjacent parts had been sound. The rule of restitutio in integrum is a profitable one, in almost any view of it, to the owner of the injured vessel, and, ordinarily, on its fullest application, it ought not to be practically extended beyond what the necessity of the case requires. There may be instances where adjacent parts which are unsound are so closely connected with the parts directly injured by the collision that they cannot be distinguished in making repairs, so that repairs of all the parts amount only to repairs of a single whole; but in order to establish a proposition of that kind, and thus enlarge the field of application of the rule of restitutio in integrum, the facts should be very clear and strong, which certainly is not true with reference to this particular case. If the item of $600 referred to, and all demurrage in excess of 16 days, and the $40 additional allowance to the superintendent, are all omitted, the owners of the Providence will yet have left all which the rule of restitutio in integrum can justly give them, and therefore these items must be disallowed.

Because the amount awarded for the damages suffered by the Providence must be corrected in these particulars, and because, on the proofs shown by the record, the steamer, as well as the schooner, must be held in fault, so that each must contribute equally to the damages caused by the collision to each, according to the admiralty rule restated by us in The Chattahoochee, 21 C. C. A. 162, 74 Fed. 899 (see the same case in 173 U. S. 540, 19 Sup. Ct. 491), both the decrees appealed from must be reversed.

On each appeal the decree of the district court is reversed, the case is remanded to that court for further proceedings in accordance with the opinion passed down this day, and the appellants recover the costs of appeal.