### THOMPSON et al. v. WINSLOW.

(District Court, D. Maine. July 5, 1904.)

#### No. 100.

1. ADMIRALTY—FINDING OF FACT BY COMMISSIONER—COST OF REPAIRS.

   The finding of an assessor of the cost of repairs to a vessel made necessary by grounding through the fault of the charterer, based upon an itemized account for such repairs, with uncontradicted testimony that the account was paid, and that the repairs were all necessitated by the grounding, will not be disturbed.

2. SAME—DEMURRAGE—BASIS OF COMPUTATION.

   Where there is an agreed rate of demurrage for a class of vessels to which an injured vessel belongs, it may be taken as the basis for computing the damages recoverable for the delay while she was being repaired.

In Admiralty. On exceptions to report of assessor.

Benjamin Thompson, for libelants.
Wm. K. & Albert E. Neal and Seth L. Larrabee, for libelee.

HALE, District Judge. This case has already been before the court. 128 Fed. 73. The libel was brought to recover for a balance of freight on a cargo of coal which the schooner Marjory Brown was carrying at the time of the injury; also to recover for damage to the schooner while being towed from Portland Lower Harbor through the bridge of the Grand Trunk Railway Company, and through Tukey's Bridge into Back Bay, to the respondent's wharf. The schooner is a four-masted vessel, of the burden of 1,061 tons, about 220 feet over all, with a coal-carrying capacity of about 1,900 tons. At the time of the injury, she had a cargo of 1,874 tons of coal, and was drawing about 19½ feet forward and 21 feet aft. The case was heard by this court in November, 1903. In February, 1904, an

¶ 2. Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.

opinion was filed, holding the respondent liable for the balance of the freight, and for the damage which the schooner had sustained in grounding while being towed. Mr. Fritz H. Jordan, of Portland, Me., was appointed assessor. The assessor has since heard the parties, and, after a careful investigation and consideration of the case, has filed a very complete report awarding:

| | | | |
|---|---|---:|---:|
| 1. | Freight on 1,874 tons coal at 90c., as per B/L | 1,686 | 60 |
| | Less advances as per B/L | 131 | 18 |
| | | $1,555 | 42 |
| 2. | Repairs made at Bath | 723 | 15 |
| 3. | 5 days' demurrage, $112.44 | 562 | 20 |
| 4. | Permanent damage to vessel | 1,000 | 00 |
| | | $3,840 | 77 |

—With interest on first item from September 9, 1903, and interest on the remaining items from October 16, 1903, until paid.

To this report the respondent files several exceptions. Two exceptions he now urges, and argues with earnestness and force. They are, first, that the allowance of $723.15 for repairs is excessive; second, that so much of the report of said assessor is not lawful as allows 6 cents per ton on the coal-carrying capacity of said schooner per day, to wit, $112.44 per day for 5 days—in all, $562.20.

The first exception involves purely a question of fact. The libelant offered evidence tending to show that the sole injury to the schooner's bottom was occasioned by her grounding in Back Bay in August, 1903; that she was repaired by the New England Company at Bath; that she was on the ways of that company from Thursday afternoon until Friday of the following week; that while she was on the ways the labor for the entire time was confined to the damage to her bottom.

The libelant produced the original account of the party who made the repairs—that account being for the sum of $723.15—and proved the payment of this sum. No testimony was offered to contradict the fact of payment, or to attack the correctness of the claim. In The Armonia, 81 Fed. 227, 26 C. C. A. 338, it was held:

"It is sufficient prima facie proof for libelant to produce bills claimed to have been paid, and witnesses who testified that they had paid them, without further testimony."

In The Rebecca v. The America, Fed. Cas. No. 11,619a, the evidence consisted of the master's testimony that the repairs were rendered necessary by reason of the collision, and that these repairs were made at the lowest price, and the testimony of the ship's agent that the bills had been paid. This evidence was held to be sufficient prima facie evidence.

In The Providence, 98 Fed. 133, 38 C. C. A. 670, Judge Putnam said:

"There was before the commissioner a bill of items showing the cost of the work in detail, but, so far as the record shows, the Van Brunt did not sift out this bill, * * * and, as the Van Brunt omitted her opportunity of sifting out the bills of repairs, there is no principle on which we can safely substitute a lump estimate made by ourselves for the award of the commissioner, who

had full opportunity of examining the bills, and of hearing all the testimony produced."

In the case before us, Mr. Jordan, the assessor, is a man of the best judgment, and of large and valuable experience in maritime matters. Under the decisions cited, and in accordance with the invariable practice in this district, I have no hesitation in deciding that his award upon this question of fact must be sustained.

The other exception presents the question of allowance of an arbitrarily fixed sum of six cents per ton on the coal carrying capacity of the vessel. The assessor finds that:

"The rate claimed is the agreed rate of demurrage for vessels of the class of the Marjory Brown. It is a fair compensation for the loss of the vessel's time, and an allowance at such a rate has the authority of precedent."

The respondent insists that the damage by delay must be fixed by the recent earnings of the vessel, as shown by her books. I cannot sustain this contention. The Conqueror, 166 U. S. 110, 17 Sup. Ct. 510, 41 L. Ed. 937, cited by the learned counsel for the respondent, is a case where the steam yacht of Mr. Vanderbilt was alleged to have been illegally detained by the collector of customs of the District of New York. That case did not present a case of loss of profits, in a commercial sense. Mr. Justice Brown, of the United States Supreme Court, said:

"In all the cases in which we have allowed demurrage, the vessel has been engaged, or was capable of being engaged, in a profitable commerce, and the amount allowed was determined either by the charter value of such vessel, or by her actual earnings at about the time of the collision."

The case of The Conqueror has been discussed in this circuit in The Providence, 98 Fed. 133, 38 C. C. A. 670. The court said:

"The fact that there is no means by which to determine the charter value of a vessel injured by a collision, or that the owner has another vessel by which she is at once replaced, does not prevent the allowance of demurrage for the time she is laid up for repairs; and, where she would have been engaged in making regular trips, the damages may be computed on the basis of her average earnings."

In the case of The America, Fed. Cas. No. 11,619a, the only evidence of damage by detention was the demurrage clause in the charter party. The respondent producing no evidence, the commissioner reported in favor of the libelant on the ground that he had made out a prima facie case. Judge Butler said:

"As respects the loss from detention, I also agree with the commissioner. Of course, the respondent is only liable for such loss on this account as was actually sustained. To show its extent with certainty is impossible. Every available method of ascertainment is open to the objection that to some extent it is speculative. No more can be accomplished at the best than an approximation. Justice nevertheless requires that the injury shall be redressed, and the objection to uncertainty comes with bad grace from one whose wrongful act has rendered an ascertainment of the loss necessary. Had the libelant here entered upon a minute inquiry into all the circumstances, and based a calculation upon the supposed extent of the vessel's net earnings, it is not probable that a safer result could have been reached. The rule adopted by the commissioner has been pronounced by those having the largest experience and the highest intelligence on the subject the safest, under general circumstances, that can be pursued. Why, therefore, should it not be treated as sufficient in

the first instance, leaving to the respondent the fullest opportunity of showing all special circumstances tending to prove that the rate thus indicated is too high in his case? The Hermann, Fed. Cas. No. 6,408, is not in point, though the language of the judge, as reported, is not without interest. Still I do not find anything in the case to shake the conclusion stated."

In cases where there is no way of determining the charter value of the injured vessel, or where there is no agreed rate of demurrage for vessels of her class, it is necessary to resort to evidence showing the average earnings of such vessel. But the Marjory Brown was engaged in commercial business. The method pursued by the assessor in fixing the rate of demurrage for a vessel so engaged was proper, in accordance with the principles of admiralty law, and with the practice in this district.

Report of the assessor confirmed.