### NANTASKET BEACH STEAMBOAT CO. v. UNITED STATES.

(District Court, D. Massachusetts. August 3, 1923.)

No. 2222.

Collision ⬡100(2)—Submarine held at fault in collision with steamer because going at immoderate speed on wrong side of channel.

Collision in a fog in the channel leading into President Roads between passenger steamer and government submarine *held* due to fault of the submarine in proceeding at immoderate speed on wrong side of the channel, in violation of articles 16 and 25 of the Inland Rules (Comp. St. §§ 7889, 7899).

In Admiralty. Libel by the Nantasket Beach Steamboat Company against the United States. Judgment for libelant.

Foye M. Murphy and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., for libelant.

Robert O. Harris, U. S. Atty., of Boston, Mass., and John V. Sullivan, Asst. U. S. Atty., of Middleboro, Mass.

BREWSTER, District Judge. On August 11, 1917, the steamer Mayflower, owned by the libelant, collided with the submarine L–10, owned, and at the time operated, by the United States. The collision took place in a fog. The Mayflower received, as a result of the collision, substantial injuries.

By act of Congress approved May 15, 1922 (42 Stat. c. 193), it was enacted that the owner of the Mayflower could submit to this court its claim arising out of the collision for and on account

of the losses alleged to have been suffered by the owner through damage to the Mayflower, the claim to be submitted "under and in compliance with the rules of said court sitting as a court of admiralty." Jurisdiction was conferred by the act to hear and determine the whole controversy and to enter a judgment or decree for the amount of legal damages sustained by reason of said collision, if any should be found to be due either for or against the United States "upon the same principle and measure of liability with costs as in like cases in admiralty between private parties."

It is pursuant to the provisions of this act that this libel is brought. The question presented is whether the collision was due to the fault of the steamer or of the submarine, or of both. I find the L–10 solely at fault and base this conclusion on the following pertinent facts concerning many of which there was no dispute:

The Mayflower is a steamboat propelled by side wheels and capable of making about 12 knots at full speed and between 5 and 6 knots at slow speed. On August 11, 1917, at 3:17 p. m., she left Rowe's Wharf, Boston, bound for Nantasket Beach with over 1,200 passengers on board. When about opposite Commonwealth Pier, she ran into a fog bank from which she emerged at a point near No. 5 Buoy. Full speed was resumed and maintained until near Castle Rock, where she again encountered fog and again proceeded on one bell, or at slow speed, until a sloop was observed ahead. The engine on the steamer was stopped in order to let the sloop pass. After the sloop had passed, the Mayflower proceeded at slow speed, and had hardly got under way when a whistle was heard which was apparently forward of her beam, and her engine was again stopped. The steamer was then going at a rate of speed estimated at not over four knots. Within a few seconds after the whistle the L–10 came within the range of vision of those who were on the lookout on the Mayflower, and on order of the captain the engine was put full speed astern. Orders were also given to change the direction of the steamer, but she was then moving so slowly that there was not sufficient steerage way to enable the vessel to respond to the helm. The L–10 came on and struck the Mayflower on her starboard side, cutting into her about 50 feet back of the gangway, causing substantial damage. The collision occurred about 4 p. m. at a point about 300 feet from No. 1 Buoy and on that side of the channel leading into President Roads lying on the starboard side of the Mayflower and port side of the L–10. At the time of the collision the fog gave a visibility of only about 200 feet; the wind was light and the tide was flood.

The L–10 was returning from exercises off Nahant. She had come down North Channel, had picked up No. 8 Buoy and planned to follow a course near No. 10 Buoy and Deer Island Light, which was along her starboard side of the channel. But instead she was off her course, bringing up near No. 11 Buoy on her port side of President Roads. From Buoy No. 11 she set her course in such a direction that she proceeded along her port side of the channel up to the place of the collision, instead of making directly for the other side of the channel, as she was required to do in order to comply with the provisions of arti-

cle 25 of Inland Rules (Comp. St. § 7899). She was at fault in making no effort to change her course when she discovered that she was on the wrong side of the channel. The Yarmouth (D. C.) 100 Fed. 667. That the rule applies to President Roads has been long settled. The Yarmouth, supra; The Vera (D. C.) 224 Fed. 998; The Belfast (D. C.) 226 Fed. 362. And it has been held to apply to navigation in a fog as much as in clear daylight. The Yarmouth, supra. As the submarine had proceeded inward bound, she had been stopping and starting her motors, but just prior to the collision she was going on one motor, which gave her a speed of about seven knots. This speed in a fog has been held in excess of the "moderate speed" required by article 16 of the Inland Rules (Comp. St. § 7889). The Providence, 98 Fed. 133, 38 C. C. A. 670; The Yarmouth, supra; The Sagamore, 247 Fed. 743, 159 C. C. A. 601.

When the whistle of the Mayflower was heard on the submarine, her motors were stopped, and almost simultaneously orders were given to reverse full speed when the steamer was sighted. The evidence as to the speed of the steamer and the submarine was conflicting, but I find that when the impact took place the Mayflower was making little, if any, headway, and the resulting damage was due to the speed of the submarine which had not been able to stop before she hit the steamer.

In conclusion, I find that the Mayflower was proceeding at a moderate rate of speed on her proper side of the channel, had complied with the rules relating to signals in foggy weather, took all reasonable precautions to avoid the collision after she heard the first whistle of the L–10, and was in no way at fault; that the L–10 was proceeding at an immoderate speed on the wrong side of the channel and in violation of Inland Rules. In these respects she was at fault, and the damages sustained by the Mayflower were the direct result of the negligent failure of the submarine to observe rules applicable to movements of vessels in a fog. It becomes unnecessary to consider other alleged faults. The libelant, therefore, is entitled to recover full damages to be assessed in accordance with the practice of this court as a court of admiralty.