## ADAMS et al. v. EASTERN TRANSP. CO.

(Circuit Court of Appeals, First Circuit. August 23, 1923.)

No. 1600.

1. **Shipping ☞58(2)—Burden on charterer of barge to show negligence or fault of owner.**

   On libel by owner of barge against charterer for damages to the barge where contributory negligence or fault of the owner is relied on as defense, burden is on charterer to establish it.

2. **Admiralty ☞81—District judge's statement that he was left in doubt held equivalent to finding that burden of showing contributory negligence had not been sustained.**

   On libel by owner of barge against charterer for damages sustained in unsuitable berth, statement of district judge, in his opinion that he was in doubt whether captain of barge attempted to pull her further into the berth after she first grounded, was equivalent to finding that charterer had not met burden of showing such fault on part of the captain.

Appeal from the District Court of the United States for the District of Massachusetts; Julian W. Mack, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Libel in admiralty by the Eastern Transportation Company against Charles F. Adams and others. From a decree for the libelant, the respondents appeal. Affirmed.

Albert T. Gould, of Boston, Mass. (Blodgett, Jones, Burnham & Bingham, of Boston, Mass., on the brief), for appellants.

Frederick Foster, of Boston, Mass. (William Gates, Jr., of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an appeal in admiralty from a decree of the District Court of Massachusetts. By a charter party dated January 25, 1922, the appellants chartered the appellee's barge Joseph J. Hock for the carriage of coal from ports in Virginia to Boston. This charter party contained the following guaranty:

"Suitable berth and sufficient water guaranteed, both at loading and at discharging berths."

The Hock was a wooden barge about 209 feet long, 36 feet, 2 inches beam, with straight sides and a flat bottom; but with 18 inches rounded bilges, drawing when loaded 15½ feet aft and 15 feet forward. She does not appear to have been different from the type of modern built barges used, according to the evidence, for the last six to nine years by transportation companies in the coal carrying trade to the port of Boston.

She was chartered by an officer of the respondents who had been in its employ for about 14 years and for the last two or three years had been charged with the duty of "chartering barges and arranging the hire of barges and the consignment of barges transporting coal from Tidewater, Va., to Boston."

Arthur P. Friend, a ship broker, negotiated the charter for the libelant and testified that she was of the same type as a large part of the barges engaged in the coal trade to-day. It was understood by both parties that the barge would be discharged at the East Boston dock of the Stetson Coal Company, a local coal company entirely independent of the respondents. Mr. Friend testified that Mr. Goodwin told him that the barge was wanted to go there and that the berth there had been dug out and made suitable for barges drawing 17 feet. There was no evidence that Mr. Goodwin or any one acting for the respondents made any inquiry in regard to the kind of barge which the Hock was; but there is evidence that the berth at the dock of the Stetson Coal Company had been used by barges of the length, beam, and draft of the Hock; but not of the particular type of this barge; but by schooner-built barges or other barges with moulded bilges.

The Hock, laden with a cargo of 1,800 tons of coal arrived in Boston about February 10, 1922, and upon the order of Mr. Friend was towed on February 14th by a tug employed by the libelant to the dock of the Stetson Coal Company for the purpose of discharging her cargo there. The barge arrived at the dock about noon of February 14th,

the tide being at that time flood and almost high water. When the bow of the barge had been pushed into the dock about 50 feet, according to the testimony of the manager of the Stetson Coal Company, and about 75 feet according to the captain of the tug, it struck the bottom and came to a stop. Another tug was called, and efforts were made by both tugs to push the barge further into the dock, but without avail; although the captain of the barge attempted to assist by pulling with her engine upon a hawser fastened to the dock, until the hawser was broken. The barge was left in this position, and when the tide receded, according to the testimony of her captain, she caught upon the piling of the wharf, which slanted from the top toward the bottom, and by her contact with the piling or by the unevenness of the bottom on which she rested, her seams were opened and she sprang a leak.

There was conflicting testimony whether the captain attempted upon the next high tide, on the night of February 14th, to pull her further ahead into the berth. Mr. Walker, the manager of the Stetson Coal Company, testified that she was pulled ahead about 25 feet further into the dock opposite some new pilings which had been used in the repair of the dock; but the captain of the barge testified that he did not move the barge further into the berth after she first grounded. He had never been into this berth before, and there was no testimony that he had any knowledge of its condition. After hearing the oral testimony given before him, the District Judge states in his opinion that he was in doubt whether the barge was moved further into the berth after the first grounding.

[1] Where contributory negligence or fault of the libelant is relied on as a defense, the burden is upon the respondent to establish it. Railroad Co. v. Gladmon, 15 Wall. 401, 21 L. Ed. 114; Railroad Co. v. Horst, 93 U. S. 291, 23 L. Ed. 898; Smith v. Havemeyer (C. C.) 36 Fed. 927; The Nellie (D. C.) 130 Fed. 213; Sterns Lumber Co. v. John H. Rice Co. (D. C.) 260 Fed. 434, 438.

[2] If the District Judge, who saw the witnesses, was left in doubt as to whether the barge was hauled ahead after the warning given to her captain by Mr. Walker in regard to the condition of the berth, this was equivalent to a finding that the respondent had not met the burden thrown upon it by its contention, and upon a reading of the record we are not satisfied that this finding was so clearly wrong as to warrant us in reversing it. It was admitted that the berth was not a suitable one for this barge, and there is no evidence that her captain had any information or any warning in regard to the danger of entering it until his barge had grounded, after an attempt had been made by two tugs to push her into the berth.

We are not satisfied that he did attempt to pull her ahead into the berth after this and are impressed with the apparent impossibility of doing so after two tugs had, with their united efforts, been able, with the assistance of her engine, to push her only a distance of 50 to 75 feet into the berth at high water. We think there was a breach of the guaranty to provide "a suitable berth and sufficient water" for discharging the barge, and we are not satisfied that anything was done

or omitted to be done by her captain which contributed to her damage and which would relieve the appellant from its liability for damages in full for its breach.

The decree of the District Court is affirmed, with costs to the appellee in this court.