## GOODRICH TRANSIT CO. v. CITY OF CHICAGO.

(Circuit Court of Appeals, Seventh Circuit. February 18, 1925.)

No. 3459.

**1. Judgment ⚖251(1)—Must conform to issues made by pleadings.**

In all legal proceedings the court will disregard all proofs outside the issues, and in pronouncing judgment will be restrained and guided by the allegations in the pleadings.

**2. Admiralty ⚖88—Decree held not warranted under issues.**

Where the libel in a suit for injury to a vessel by collision with a pumping crib, in a fog, alleged that the fog bell on the crib was not being rung, which allegation was denied in the answer, and the case was tried on that issue alone, with a finding that the bell was not being rung, a further finding that the vessel was also in fault was not warranted under the pleadings.

**3. Navigable waters ⟨≈⟩26(3)—Vessel injured in collision with crib not chargeable with contributory fault, except on clear evidence.**

Where the failure of those in charge of a pumping crib in Lake Michigan to ring the fog bell, as required by law, was sufficient to account for a collision with the crib by a steamship in a fog, the vessel could not be charged with contributory fault except on clear evidence.

**4. Navigable waters ⟨≈⟩26(3)—Vessel not required to stop to ascertain location of obstruction.**

There is no rule which required a steamship, on approaching Chicago on Lake Michigan in a fog, to stop until she ascertained the position of a pumping crib maintained by the city, which was required by law to keep its fog bell ringing as notice to shipping.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in admiralty by the Goodrich Transit Company against the City of Chicago. From the decree, libelant appeals. Reversed and remanded, with directions.

Charles E. Kremer, of Chicago, Ill., for appellant.

Frank T. Huening, of Chicago, Ill., for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. On and for several years prior to July 13, 1922, the appellee, the city of Chicago, owned a waterworks crib used in connection with its distribution of water to the residents of the city, known as the "Carter H. Harrison Crib," and located on the navigable waters of Lake Michigan at a point north and east of the harbor entrance to the city. At that time the appellant, the Goodrich Transit Company, owned and operated the Indiana, a wooden freight and passenger steamer, duly enrolled and licensed and engaged in interstate commerce on the Great Lakes. On said 13th day of July this steamer, laden with merchandise and having on board a number of passengers, was on a voyage from Grand Haven, Mich., to Chicago, Ill. Somewhere near 6 o'clock on the morning of the 13th, her master sighted a crib, known as the "Wilson Avenue Crib," which is located 3½ miles north of the Carter H. Harrison Crib. He then changed his course to south by east in order to enter the harbor. This course led him in the direction of the Harrison Crib. After proceeding about one-half the distance from the Wilson Avenue Crib to the Harrison Crib,

he ran into a fog. After entering the fog the steamer was slowed down to a speed of from 2 to 3 miles an hour, and while thus proceeding the Harrison Crib was suddenly discovered ahead at a distance variously estimated by the witnesses as from 50 to 150 feet. It was too late to avoid a collision, and the steamer struck the crib and was injured.

The appellant charged in its libel that the city was at fault in not sounding its fog bell on the Harrison Crib as it should have done under the circumstances and as it was obliged to do by the permit of the government to erect and maintain the crib. The appellee in its answer denied that it failed to sound the fog bell and specifically alleged that at the time the vessel struck the crib, "and for some time prior thereto, the fog bell on said Carter H. Harrison Crib had been ringing and was being rung and sounded regularly, continually, and at very brief intervals, and continued to be rung and sounded by the junior crib keeper on duty at said crib at said time, prior to said time, and until some time after the hour of the alleged collision, and that every care and precaution was taken and exercised by said respondent to give every warning possible to avoid any accidents whatsoever, and that had said steamer been operated, managed, and controlled at said time with such due care and caution as the circumstances would require, the alleged collision would not have occurred."

Upon the issues thus made the case was tried. The appellant's evidence was directed to the failure of the city to sound the fog bell under the circumstances, and the appellee introduced no evidence except that tending to show that the fog bell was properly sounded. The trial court found that both parties were at fault, that the city was at fault for not sounding the fog bell, and "that under all the circumstances the steamer Indiana should have stopped until the fog lifted or until it could have aroused the attendants on the crib and received the information necessary to a safe forward movement."

[1] The appellant, by its assignment of errors and upon argument here, insists that neither the pleadings nor the evidence warrant the finding that the steamer was at fault in the collision. The defense that the steamer was at fault is an affirmative defense, and it must be specifically alleged and proved. In all legal proceedings the judgment must be in accordance with the allegations and the proofs. The court will

disregard all proofs outside the issues, and in pronouncing judgment will be restrained and guided by the allegations in the pleadings. McKinlay v. Morrish, 62 U. S. 343, 16 L. Ed. 100.

[2] Appellee insists that its answer is amply sufficient to support the finding that the steamer was at fault. The only part of the answer that refers to the conduct of the steamer is the part above quoted. That allegation is to the effect that the fog bell was being rung and that had the steamer heeded the warning the collision would not have occurred. In other words, the only fault imputed to the steamer by the statement in the answer, and this is a mere conclusion of the pleader, was in its officers not hearing or heeding the ringing of the fog bell. As the trial court found and the evidence shows that the fog bell was not rung, this averment as to want of care on the part of the steamer disappears. The admiralty rules require that "all answers shall be full and explicit and distinct to each separate article and separate allegation in the libel." There is nowhere in the answer any direct averment that the steamer was being handled in a negligent manner; that is, without a proper lookout, as now claimed by the appellee, or without coming to a stop as suggested by the trial court. There was therefore no pleading by the appellee upon which the court could base its finding that the steamer was at fault.

[3] But passing this point we are of the opinion that the trial court erred in finding that the steamer was at fault upon the evidence. "Defense of contributory negligence on the part of libelant must be affirmatively proved by a preponderance of the evidence." The Nellie (D. C.) 130 F. 213; Adams v. Eastern Trans. Co. (C. C. A.) 291 F. 756, and cases there cited. There is no question that the appellee failed to ring the fog bell. It was not rung until after the collision. This negligence on its part was obvious and inexcusable. "Where fault on the part of one vessel is established by uncontradictory testimony, and such fault is, of itself, sufficient to account for the disaster, it is not enough for such vessel to raise a doubt with regard to the management of the other vessel. There is some presumption at least adverse to its claim, and any reasonable doubt with regard to the propriety of the conduct of such other vessel should be resolved in its favor." The City of New York, 147 U. S. 72, 13 S. Ct. 211, 37 L. Ed. 84.

In The Victory, 168 U. S. 410, 18 S. Ct. 149, 42 L. Ed. 519, the Supreme Court said: "As between these vessels, the fault of the Victory being obvious and inexcusable, the evidence to establish fault on the part of the Plymothian must be clear and convincing in order to make a case for apportionment. The burden of proof is upon each vessel to establish fault on the part of the other. The recognized doctrine is thus stated by Mr. Justice Brown in The Umbria, 166 U. S. 404, 409: 'Indeed, so gross was the fault of the Umbria in this connection that we should unhesitatingly apply the rule laid down in the City of New York, 147 U. S. 72, 85, and the Ludvig Holberg, 157 U. S. 60, 71, that any doubts regarding the management of the other vessel, or the contribution of her faults, if any, to the collision, should be resolved in her favor.'"

The appellee has not met these requirements. The claim is that the steamer "did not have proper lookout service." "It is well settled that the absence of a lookout is not material, where the presence of one would not have availed to prevent a collision." The Blue Jacket, 144 U. S. 371, on page 389, 12 S. Ct. 711, 718, 36 L. Ed. 469. In the instant case the steamer had a lookout. It would seem that in a fog when a lookout could not see it would satisfy the requirements that he could and did listen. The fact that he was using the lead line, sounding for depth, does not militate against the fact that he was listening, and that he did not hear the fog bell for the reason that it was not being rung. The evidence does not warrant the claim that the steamer was at fault as to the lookout.

[4] We think that the trial court erred in finding that under the circumstances the steamer should have stopped until the fog lifted or until it could have aroused the attendants on the crib and received the information necessary to a safe forward movement. There is no rule of law requiring a vessel to stop in such a place and under such circumstances as are disclosed by the evidence. The distinction sought to be made between the cases of collision between two vessels and collisions between a vessel and a stationary object such as this crib is fanciful rather than real. In the case of The Benjamin A. Van Brunt, 98 F. 131, 38 C. C. A. 668, the Court of Appeals of the First Circuit had before it the case of a collision between the Pilgrim, a passenger steamer, and the schooner Van Brunt while the latter was at anchor. The circumstances

as to fog and the position of the vessel at anchor when the passenger steamer collided with it were strikingly similar to the case at bar. The Van Brunt was lying at anchor in the channel in front of the city of Fall River and had been so anchored for some days. The Pilgrim knew she was anchored there. The fog was dense. The Van Brunt was not sounding her fog bell, and the Pilgrim hearing no sound proceeded in the fog and ran into the Van Brunt. It was contended that under the circumstances the Pilgrim should have stopped and that her lookout service was not sufficient. The court overruled both these contentions and found that the collision was caused by the failure of the Van Brunt to ring her fog bell, that the Pilgrim was not in fault, and approved the decree of the District Court in awarding all the damages against the Van Brunt.

The cause is reversed and remanded to the District Court, with directions to enter judgment in accordance with the foregoing.